Daniel C. CORDLE, Plaintiff-Appellee,

v.

RENAULT, INC., Defendant-Appellant.

Daniel C. CORDLE, Plaintiff-Appellee,

v.

B. B. BURCHAM, doing business as Burcham Motors, Defendant-Appellant.

Nos. 16509, 16510.

United States Court of Appeals Sixth Circuit.

May 31, 1966.

John S. Carriger, Chattanooga, Tenn., for appellant, Renault, Strang, Fletcher, Carriger & Walker, Chattanooga, Tenn., on the brief.

Paul Campbell, Jr., Chattanooga, Tenn., for appellant B. B. Burcham, Campbell & Campbell, Chattanooga, Tenn., on the brief.

S. Richard Holcomb, and Walter L. Lusk, Chattanooga, Tenn., for appellee, Walter S. Lusk, S. Richard Holcomb, Lusk & Holcomb, Chattanooga, Tenn., on the brief.

Before WEICK, Chief Judge, and PHILLIPS and EDWARDS, Circuit Judges.

PER CURIAM.

This is a products liability case. The dealer and manufacturer of a Renault automobile were held liable to the purchaser for personal injuries and property damage. The cause of the damage was alleged to be a defect or defects in the automobile. This car went out of control on the highway and turned over, allegedly as the result of vibration.

Jurisdiction is based upon diversity of citizenship. Tennessee law is controlling.

The complaint charged both negligence and breach of express and implied warranty. The district judge, the Honorable Frank W. Wilson, directed a verdict against plaintiff on the negligence count, but submitted to the jury the issues of express and implied warranty.

The jury returned a verdict against the dealer and manufacturer for $15,000 for personal injury and $1,200 for property damage.

The automobile was purchased in Chattanooga, Tennessee, February 18, 1963.

The accident occurred nineteen days later. At the time of the accident the following express warranty was in effect:

"1. This vehicle to be free under normal use and service from defects in material or workmanship for a period of twelve (12) months from date of delivery, or until such vehicle has been driven, used or operated for a distance of twelve (12) thousand miles, whichever event shall first occur."

At the time of the sale of the automobile, a Tennessee statute provided for an implied warranty on the sale of personal property.[1]

Evidence was introduced that within an hour after this new car was delivered, the purchaser took it back to the dealer and told him of the vibration. After the dealer's mechanics had worked on it, plaintiff tested it, found that it was still vibrating and so advised the service manager. The service manager told plaintiff to continue to drive the car until the 1,000 mile check-up, instructed him to bring it back for inspection at that time, and assured him that it was safe to drive for this period. The car continued to vibrate, particularly when driven around forty to forty-five miles per hour, but was controllable when the brakes were applied.

The purchaser used the car in his business as a salesman in the area of Atlanta, Georgia, 120 miles south of Chattanooga. Still experiencing vibration, he had the tires balanced at a service station in Atlanta, but the vibration continued. He returned the car to the dealer in Chattanooga for the 1,000 mile check-up on a Saturday morning twelve days after its purchase and told the service manager that it was still vibrating. The dealer kept the car approximately an hour and a half until just before the noon closing hour and the service manager again assured plaintiff that the car was all right and had checked out satisfactorily. Plaintiff drove the car approximately ninety miles the Saturday afternoon following the 1,000 mile check-up and found that the vibration had not been corrected.

Plaintiff left Chattanooga at 6:00 a. m. the following Monday morning to keep an appointment in Atlanta at 9:00 a. m. He drove the car about seven hundred miles during that week. On Saturday afternoon when he was driving on the Atlanta Expressway en route back to Chattanooga, he passed another car while going about forty-five miles per hour. The Renault began vibrating and plaintiff began "fighting the steering wheel."[2] He applied the brakes but this did not control the vibration. The car went out of control, hit a guard rail and turned over twice, resulting in serious injuries to plaintiff.

We hold that the evidence was sufficient to justify submission to the jury of the issues of breach of warranty, waiver, proximate cause and assumption of the risk. The district judge charged the jury fully and in accordance with the applicable Tennessee law on all these issues. We find that the verdicts are supported by competent evidence and hold that there was no reversible error. Ford Motor Co. v. Lonon, Tenn., 398 S.W.2d 240 (1966); General Motors Corp. v. Dodson, 47 Tenn.App. 438, 338 S.W.2d 655 (1960); Allen v. Brown, 181

1. The Uniform Commercial Code now is in effect in Tennessee. At the time of the sale here involved, T.C.A. § 47–1215 provided for an implied warranty as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

2. An eye witness, the driver of the car which was passed by the Renault, testified to this effect.

Kan. 301, 310 P.2d 923 (1957); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 98, 75 A.L.R.2d 1 (1960).

Affirmed.